UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NICHOLAS ARMADA, and SCOTT COOK,
individually and on behalf of those similarly
situated,

            Plaintiffs,

vs.

THE COCA-COLA COMPANY and ENERGY
BRANDS, INC. (d/b/a GLACEAU),

            Defendants.
_____/

Case No.:

CLASS ACTION

Jury Trial Demanded

### CLASS ACTION COMPLAINT

Plaintiffs NICHOLAS ARMADA and SCOTT COOK, individually and on behalf of those similarly situated, ("Plaintiffs") bring this class action against The Coca-Cola Company ("Coke") and Energy Brands, Inc. d/b/a Glaceau (collectively "Defendants") and allege the following:

## I.
### INTRODUCTION

1. This is a class action on behalf of Florida consumers seeking redress for Defendants' deceptive trade practices of misrepresenting the dietary claims of its product "VitaminWater." Defendants market this product as a dietary supplement drink in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") and FDA regulations.

2. This is an action for damages, declaratory judgment, and injunctive relief under FDUTPA. In particular, VitaminWater's labeling and marketing is misleading because it (1)

suggests that VitaminWater contains nothing other than vitamins and water; (2) portrays VitaminWater as healthy when in fact it is not; and (3) deceptively conveys an overall message of purported benefits which effectively draw attention away from the significant amounts of placed in sugar the product.

3.     VitaminWater has been marketed as a "nutrient enhanced water beverage" that proclaims "vitamins + water = all you need." In truth, VitaminWater contains 33 grams of sugar.

4.     Furthermore, Defendants have deceived consumers by marketing, advertising, and labeling VitaminWater's many flavors with names including: "Defense," "Energy," "Balance," "Focus," "Formula 50," "Endurance," "Charge + -," and "Multi-V," each accompanied by a slogan touting the purported health benefits from drinking that particular flavor. For example, Defendants claim that "Rescue" "is especially formulated to support optimal metabolic function with antioxidants that may reduce the risk of chronic disease, and vitamins necessary for the generation and utilization of energy from food."

5.     Defendants' labels are clearly deceptive. Their "Defense" flavor claims: "if you had to use sick days because you've actually been sick then you're seriously missing out, my friends. See, the trick is to stay healthy and to use sick days to just um, not go in. And this combination of zinc and fortifying vitamins can help out with that and keep you *healthy* as a horse. So drink up."

6.     Likewise, the statement on the "B-Relaxed" flavor claims that the product "is specially formulated with [B] vitamins and theanine. The [B] vitamins are there to replace those lost during times of stress (physical or mental). Theanine is an amino acid naturally found in tea leaves and has been shown to promote feelings of relaxation. This combination can help bring about a *healthy* state of physical and mental being."

7. Such claims are in violation of FDA regulations because VitaminWater achieves its nutritional contents solely through fortification.

8. The purpose of Defendant's claims is to deflect consumers' attention from the fact that Vitamin Water is nothing more than another sugary soft drink and not the beneficial fortified drink as advertised. Also, as consumers throughout the United States have become increasingly health-conscious, many seek to avoid consuming sugary soft drinks by choosing healthier beverage alternatives. This fact, coupled with Defendants' deceptive marketing campaigns, has fueled public purchase and consumption of VitaminWater.

9. Defendants' misrepresentations about VitaminWater, including its dietary-supplement name and good-for-you promises, bombard the reasonable consumer with messages of purported health benefits, and draw their attention away from the unhealthy and excessive amounts of sugar illustrated throughout. Any reasonable consumer should not be held responsible for uncovering Defendants' deceptive business practices. Instead, consumers should be able to trust that representations made on product labels and in-store advertisements of VitaminWater are consistent with ingredients listed on the back label, and not the opposite as is the case with VitaminWater.

10. Defendants' should held accountable for deceptive practices and not be permitted to continue deceiving consumers for their own financial incentives. Defendant's misleading advertisements cause economic harm nationwide. Consumers should be able to trust advertised representations made by companies, manufactures, sellers, and distributers when purchasing products without first having to do a thorough investigation into a product's purported claims prior to its purchase. This type of deceptive conduct continues to chip away at public trust and further damages our economy.

11. Defendants have enjoyed substantial profits from sales of VitaminWater, which are estimated at more than half a billion dollars annually, and continue to rise daily. In fact, Defendants charge almost twice as much for VitaminWater then they do for their other sugary beverages (e.g. Coca-Cola Classic and Sprite, etc).

## II.
## JURISDICTION AND VENUE

12. Original jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum value of $5,000,000, and this is a class action in which members of the Plaintiff Class are citizens of a state different from Defendants.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transgressions giving rise to the alleged claims occurred in this district and because Defendants are authorized to conduct business in this district and have intentionally availed themselves of the laws and markets within this district through the promotion, marketing, distribution, and sale of their products in this district; do substantial business in this district; and are subject to personal jurisdiction in this district. Plaintiffs and many members of the Class reside in the Southern District of Florida.

## III.
## PARTIES

14. Plaintiffs NICHOLAS ARMADA and SCOTT COOK are adult resident citizens of Miami, Florida, and Ft. Lauderdale, Florida. Each Plaintiff relied on Defendants' false, misleading and deceptive written misrepresentations. Had Plaintiffs known the true facts, they would not have purchased the product, nor paid the inflated prices for the product.

15. Defendant The Coca-Cola Company is a Georgia corporation headquartered in Atlanta, Georgia. It is one of the largest distributors, manufacturers and marketers of non-alcoholic beverage concentrates in the world. Sometime in 2007, it expanded its product line by acquiring Energy Brands, Inc., also known as Glaceau, the maker of Vitamin Water.

16. Defendant Energy Brands, Inc. (d/b/a Glaceau) is a wholly owned subsidiary of Defendant The Coca-Cola Company and is headquartered in Whitestone, New York. Defendants may be served with process through its registered agent.

## IV.
## BACKGROUND FACTS

17. Defendants recognize the importance of marketing and labeling a product for public purchase. Indeed, Defendant Coke acknowledged that obesity and other health concerns could reduce demand for some of its products and pose a risk to profits. Coke has further stated, in publicly filed documents with the United States Securities and Exchange Commission, that an increase in public awareness about sugar sweetened beverages could affect its profitability.

18. In fact, VitaminWater does not even have The Coca-Cola Company's name anywhere on its packaging or labeling as a tactical marketing strategy for avoiding harm to VitaminWater's reputation as advertised, which results in huge corporate profitability. If VitaminWater's reputation as a dietary supplement is harmed, their sales would plummet since it would become just another sugary beverage for consumers to choose from. The VitaminWater labels make claims about purported disease preventative benefits and otherwise make misleading statements in connection with its labeling, including but not limited to the following:

- Flavor names such as "Rescue" and "Defense";
- The name "VitaminWater" itself;

- Statement that "this combination of zinc and fortifying vitamins can … keep you healthy as a horse" on the label of Vitamin Water's "Defense";
- The statement "specially formulated to support optimal metabolic function with antioxidants that may reduce the risk of chronic diseases, and vitamins necessary for the generation and utilization of energy from food" on the label of Vitamin Water's "Rescue" flavor;
- The statement "specially formulated to provide vitamin [A] (a nutrient known to be required for visual function), antioxidants and other nutrients [that] scientific evidence suggests may reduce the risk for age-related eye disease" on the label of Vitamin Water's "Focus" flavor;
- The statement "specially formulated with bioactive compounds that contribute to an active lifestyle by promoting healthy, pain free functioning of joints, structural integrating of joints and bones, and optimal generation and utilization of energy from food" on the label of Vitamin Water's "Balance" flavor;
- The statement "specially formulated with nutrients required for optimal functioning of the immune system, and the generation and utilization of energy from food to support immune and other metabolic activities" on the label of Vitamin Water's "Defense" flavor;
- The statement "specially formulated with [B] vitamins and theanine. The [B] vitamins are there to replace those lost during times of stress (physical and mental). Theanine is an amino acid found naturally in tea leaves and has been shown to promote feelings of relaxation. This combination can

6

help bring about a healthy state of physical and mental being" on the label of Vitamin Water's "B – Relaxed" flavor; and

- The statement "specially formulated with nutrients that enable the body to exert physical power by contributing to structural integrity of the musculoskeletal system, and by supporting optimal generation and utilization from food" on the label of Vitamin Water's "Power-C" flavor.

19. VitaminWater has created a public appearance of being a healthier alternative to sugary soft drinks and a good source of dietary supplements. This message is deceptive, misleading, false, and unfair.

20. The FDA has promulgated a so-called "jelly bean" rule to ensure that an advertiser of sugar-based products would not be able to claim that jelly beans are good for the heart (even though they are low in fat and contain no cholesterol, and would otherwise meet the conditions for a "heart-healthy" claim). Vitamin Water (a sugar-based product) violates this rule because it achieves its nutritional content solely through fortification.

21. Moreover, Defendants' claim that some flavors are "specially formulated to provide vitamin (A), antioxidants and other nutrients [that] scientific evidence suggest may reduce the risk of age-related eye disease" is also a violation of FDA regulations. *See, e.g.*, 21 C.F.R. 101.14(e) (noting that health claims about a product are disallowed if the product does not meet the minimum nutritional requirement).

22. Defendants also mislead the public by using a name that includes some but not all ingredients. Specifically, it uses the words "vitamin" and "water," but leaves out its key ingredient: sugar.

23. The FDA has recognized that such product names may mislead consumers:

> The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling.

21 C.F.R. § 101.18(b).

24. The potential for confusion is heightened and compounded by the presence of the Defendants' other statements in Vitamin Water's labeling, such as "vitamins + water equal all you need" and "vitamins + water equal what's in your hand" which have the potential, and indeed do, reinforce a consumer's mistaken belief that the product is comprised of only vitamins and water.

25. Defendants have violated FDA regulations by making health claims about VitaminWater even though these claims do not meet required minimum nutritional thresholds by using the word "healthy" in implied nutrient content claims (which Vitamin Water's fortification does not comply with FDA policy), and by using a product name that references only two of VitaminWater's ingredients, omitting the fact that there is a substantial amount of sugar in the product. Each single-serve 20-ounce bottle contains approximately 33 grams of sugar. By comparison, a single-serve 12-ounce can of Coca-Cola Classic contains 39 grams of sugar.

26. Diets high in added sugar – from foods such as VitaminWater – squeeze healthier food out of the diet, thereby displacing foods that provide nutrients that reduce the risk of osteoporosis, cancer, heart disease, stroke, and other diseases.[1]

27. In addition, diets rich in added sugars contribute to weight gain and obesity in both children and adults.[2] Obesity, in turn, increases the risk of diabetes, heart disease, high blood

---

[1] See S. Bowman, *Diets of Individuals Based on Energy Intakes from Added Sugars*, 12 FAMILY ECON. NUTRITION REV. 31-8 (1999); G. Mrdjenovi & D.A. Levitsky, *Nutritional and Energetic Consequences of Sweetened Drink Consumption in 6 – to 13-year-old Children*, 142 J. PEDIATRICS 604-10 (2003).

pressure, and other diseases.[3] In people who are insulin resistant, a high intake of added sugars increases levels of triglycerides in the blood, which are associated with a higher risk of heart disease and diabetes.[4] In addition, frequent consumption of foods rich in added sugars increases the risk of osteoporosis.[5]

28. Defendants' labels are more than puffery and are not merely exaggerated claims of quality; rather, they describe the content of a food product in ways consumers might reasonably rely on in choosing to purchase Vitamin Water.

29. In sum, Defendants' labeling, marketing and advertising of Vitamin Water violates Florida law and the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq. ("FDCA").

30. Defendants have profited at the expense and trust of public health and continue to reap millions through unfair, unlawful and fraudulent advertising and marketing.

31. Plaintiffs and Class members have suffered damages as a consequence of Defendants' conduct.

## IV.

### CLASS ALLEGATIONS

32. Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23 on their own and on behalf of the class described below.

---

[2] *See* D.S. Ludwiq, K.E. Peterson & S.L. Gortmaker, *Relationship between Consumption of Sugar-Sweetened Drinks and Childhood Obesity*, 357 LANCET 505-8 (2001); C.S. Berkey, H.R. Rockett, A.E. Field, et al., *Sugar-added Beverages and Adolescent Weight Change*, 12 OBESITY RES. 778-88 (2004); C.M. Apovian, *Sugar-sweetened Soft Drinks, Obesity, and Type 2 Diabetes*, 292 J. AM. MED. ASS'N 927-34 (2004); Ctr. for Disease Control and Prevention, Nat'l Ctr. For Health Statistics, *Prevalence of Overweight among Children and Adolescents: United States*, 1999-2002, *available at* www.cdc.gov/nchs/products/pubs/hestats/obese/obse99.htm.
[3] U.S. Surgeon General, U.S. Dep't of Health and Human Serv., *The Surgeon General's Call to Action to Prevent and Decrease Overweight and Obesity* (2001) *available at* www.surgeongeneral.gov/topics/obesity/calltoaction/CalltoAction.pdf.
[4] M.J. Stampfer, R.M. Krauss, J. Ma, et al., *A Prospective Study of Triglyceride Level, Low-density Lipoprotein Particle Diameter, and Risk of Myocardial Infraction*, 276 J. AM. MED. ASS'N 882-8 (1996).
[5] S.J. Whiting, A. Healey & S. Psiuk, *Relationship between Carbonated and Other Low Nutrient Dense Beverages and Bone Mineral Content of Adolescents*, 32 NUTRITION RES. 1107-15 (2001).

9

33. Plaintiffs seek certification of a Florida consumer class defined as follows:

> All Florida residents who purchased VitaminWater at any time during the applicable statute of limitations. Excluded from the Class are Defendants, and any entity in which any Defendant has controlling interest, and any officers or directors of the Defendant, the legal representatives, heirs, successors, and assigns of Defendants, and any judicial officer assigned to this matter and his or her immediate family.

34. Plaintiffs are members of the class they seek to represent.

35. The Class consists of hundreds of thousands of individuals and is so numerous that joinder is impracticable.

36. Typicality: Plaintiffs' claims are typical of the claims of the Class because they are all members of a Class who are seeking to challenge the conduct of the Defendants; specifically, the unfair, unlawful and fraudulent advertising and marketing of VitaminWater. Plaintiffs and Class members have sustained damages (purchase price) as a result of Defendants' common conduct towards them.

37. Common Questions Predominate: This action involves questions of law and fact common to Plaintiffs and Class members. These common questions predominate over any issues affecting individual Class members and include the following:

- whether the Defendants used false and misleading statements in advertising Vitamin Water to the Plaintiffs and the Class;
- whether the Defendants' marketing and advertising constitutes unfair, unlawful or fraudulent business practices;
- whether the Defendants' marketing, advertising and labeling of Vitamin Water constitutes false advertising;

- whether the Defendants' conduct unjustly enriched the Defendants at the expense of the Plaintiffs and Class Members;

- whether injunctive relief should be imposed upon Defendants to prevent such conduct in the future;

- whether the Defendants' conduct constitutes an unfair and deceptive trade practice under the FDUTPA, §§ 501.203(c)(3)(c) and 501.204; and

- whether Defendants' conduct injured consumers and, if so, the extent of injury.

38. Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of Class members. Plaintiffs have no known claims which are antagonistic to those of the Class. Plaintiffs have retained competent and experienced counsel in complex consumer class actions. Counsel is committed to the vigorous prosecution of this action.

39. Superiority: Class certification is appropriate because the issues of law and fact are common to the Class and predominate over any questions affecting only individual members, thereby rendering the class action superior to all other available methods for the fair and efficient adjudication of this controversy.

40. Numerosity: The members of the Class are so numerous that joinder of each member is impracticable, the claims of the representative parties are typical of the claim of each Class member, and the representative parties can fairly and adequately protect and represent the interests of each member of the Class. The expense and burden of litigation would substantially impair the ability of the members to pursue individual cases to protect their rights. In the absence of a class action, Defendants will retain the benefits of their wrongdoing.

41. Defendants have acted and/or refused to act on grounds generally applicable to the Plaintiffs and the Class, thereby warranting appropriate injunctive and/or declaratory relief. The prosecution of separate claims by individual members of the Class would create a risk of inconsistent or varying adjudication concerning individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class

## V.

### CAUSES OF ACTION

### COUNT ONE
### VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

42. Plaintiffs repeat and incorporate the allegations of the preceding paragraphs.

43. The purpose of FDUTPA is to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce. The business practices alleged above violate FDUTPA in that the misbranding of food suggests that its nutrient content may help consumers maintain healthy dietary practices when in fact it is a snack food that has been fortified to provide Defendants' claimed nutritional benefits. Moreover, Defendants' deceptively use the name for a food containing two or more ingredients which includes or suggests a name of one or more but not all such ingredients, even though it names all its ingredients elsewhere in labeling.

44. Plaintiffs and the other Class members have suffered damages by virtue of buying VitaminWater that they would not have purchased but for Defendants' unfair marketing, advertising, packaging and labeling, or by paying an excessive premium price for the Defendants' products.

45. There is no benefit to consumers or competition by deceptively marketing, advertising, packaging and labeling unhealthy water beverages as healthy.

46. In fact, Defendant Coke was recently advised by the FDA that its fortification of another soft drink (Coke Plus) violated federal law against misbranding products because both the name mischaracterized the ingredients and it was inappropriate to fortify snack foods. Defendants have misbranded its vitamin product suggesting that because of its nutrient content it may help customers maintain a healthy dietary practice when in fact it is actually characterized as a snack food because of the high sugar content and has only been fortified in order provide the claimed nutritional benefits which are in violation of FDA regulations. *See* 21 C.F.R. §§ 101.65(d)(1)(i) and 104.20. By misbranding VitaminWater, the Defendants have consciously disregarded federal regulations and FDUTPA.

47. Defendants marketing and advertising of VitaminWater is unconscionable and constitutes unfair and deceptive methods of competition in violation of one or more of the following:

    (a) The standards of unfairness and deception set forth and interpreted by the federal courts as set out in FDUTPA, §§ 501.203(3)(b) and 501.204; and

    (b) The law against unfair deceptive trade practices as incorporated into the FDUTPA, §§ 501.203(3)(c) and 501.204.

48. Given the vast numbers of consumers who have purchased VitaminWater, Plaintiffs and Class members have been damaged and will continue to be damaged by the deceptive, undisclosed, unfair, confusing advertising, marketing and sale of VitaminWater.

49. If left unchecked, Defendants' deceptive, unfair marketing and advertising methods are certain to damage the Plaintiffs and Class in the future. As a result, Plaintiffs and the Class are entitled to an order enjoining such future conduct.

50.     Plaintiffs are obligated to pay their attorneys for their services and are entitled to an award of fees pursuant to FDUTPA § 501.2105.

## COUNT II
## UNJUST ENRICHMENT

51.     Plaintiffs repeat and incorporate the allegations of the preceding paragraphs.

52.     Defendants have been unjustly enriched at the expense of Plaintiffs and the Class.

53.     To the detriment of Plaintiffs and Class members, Defendants have been, and continue to be, unjustly enriched as a result of the unfair, unlawful and/or deceptive marketing, advertising and sale of Vitamin Water.

54.     Accordingly, Plaintiffs and Class members seek full disgorgement and restitution of the Defendants' unjust enrichment, benefits and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

WHEREFORE, Plaintiffs and members of the Class request:

1.      An order certifying the proposed Class under Fed. R. Civ. P. 23, and appointing Plaintiffs and their undersigned counsel of record to represent the Class;

2.      an order requiring Defendants to notify each affected Class member and the general public of the wrongful conduct to which they have been subjected;

3.      declaratory judgment and permanent injunctive relief;

4.      compensatory and consequential damages suffered by Plaintiffs and the members of the Class;

5.      Plaintiffs' attorney's fees and costs;

6.      pre-judgment interest;

7.      costs of suit; and

8. such other and further legal and equitable relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class request trial by jury as to all claims so triable.

DATED: September 1, 2010

                                                      s/William C. Wright
LEOPOLD KUVIN, P.A.
(FL Bar No 138861)
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: 561/515-1400
Facsimile: 561/515-1401
wwright@leopoldkuvin.com

AASHISH Y. DESAI
(Pro Hac Vice forthcoming)
Mower Carreon & Desai LLP
8001 Irvine Center Drive, Suite 1450
Irvine, California 92618
Telephone:	(949) 474-3004
Facsimile:	(949) 474-9001

**Attorneys for Plaintiffs**